1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| RHONDA S. ABEL, | |
|---|---|
| Plaintiff, | CASE NO. 12-cv-06025 JRC |
| v. | ORDER ON PLAINTIFF'S COMPLAINT |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 3; Consent to Proceed Before a United States Magistrate Judge, ECF No. 4). This matter has been fully briefed (*see* ECF Nos. 16, 19, 20).

After considering and reviewing the record, the Court finds that the ALJ erred in failing to consider whether plaintiff meets Listing 12.05C, describing intellectual

disability. Because the record demonstrates that she satisfies all three prongs of the listing, the case is reversed and remanded for payment of benefits.

## BACKGROUND

Plaintiff, RHONDA S. ABEL, was born in 1966 and was 39 years old on the alleged date of disability onset of June 25, 2006 (Tr. 134, 137). Plaintiff attended special education classes in high school, repeating some grades. She was unable to amass enough credits to graduate and did not obtain a GED (Tr. 224, 416). Her last employment as a dish washer in a restaurant ended about four years prior to the hearing. She worked there for 2-3 years, but was fired for "speaking my mind" (Tr. 431).

The ALJ found that plaintiff has the severe impairments of depression; borderline intellectual functioning; attention deficit hyperactivity disorder; post-traumatic stress disorder; polysubstance dependence, in remission; chronic muscle spasms affecting the low back and right shoulder; right knee pain, status post surgery; and asthma (Tr. 386).

At the time of the second administrative hearing, plaintiff lived alone in a house, and received assistance from a friend in the evenings (Tr. 418).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits ("DIB") under 42 U.S.C. § 423 and Supplemental Security Income ("SSI") benefits under 42 U.S.C. § 1382(a) of the Social Security Act on February 4, 2008 (*see* Tr. 134-39). The applications were denied initially and following reconsideration (Tr. 87-90, 96-99). Plaintiff's requested hearing was held before Administrative Law Judge Larry Kennedy on December 21, 2009 (*see* Tr. 32-82). On February 22, 2010, the ALJ issued a written

decision concluding that plaintiff was not disabled pursuant to the Social Security Act (Tr. 496-508).

On September 9, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). *See* 20 C.F.R. § 404.981. Plaintiff appealed the Commissioner's decision to the United States District Court for the Western District of Washington, and on November 1, 2011, U.S. Magistrate Judge Mary Alice Theiler remanded the matter back to the Commissioner for further administrative proceedings (Tr. 519-31; Case No. 3:10-cv-05810-MAT).

On September 10, 2012, Administrative Law Judge Cynthia D. Rosa ("the ALJ"), held a second hearing (Tr. 411-46). The ALJ issued a new decision on September 26, 2012 (Tr. 383-404), finding plaintiff not disabled. This appeal followed.

Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in December 2012 (*see* ECF No. 1). Defendant filed the sealed administrative record regarding this matter ("Tr.") on February 15, 2013 (*see* ECF Nos. 11, 12).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ erred by finding the plaintiff did not have an impairment that met or equaled a listing; (2) Whether or not the ALJ erred by finding plaintiff was not credible; and (3) Whether or not the ALJ erred by not complying with Social Security Ruling 96-8p when assessing plaintiff's residual functional capacity (*see* ECF No. 16, p. 2).

1      STANDARD OF REVIEW

2          Plaintiff bears the burden of proving disability within the meaning of the Social
3  Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on
4  the fifth and final step of the sequential disability evaluation process. *See Bowen v.*
5  *Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to
6  engage in any substantial gainful activity" due to a physical or mental impairment "which
7  can be expected to result in death or which has lasted, or can be expected to last for a
8  continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A),
9  1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's
10 impairment(s) are of such severity that claimant is unable to do previous work, and
11 cannot, considering the claimant's age, education, and work experience, engage in any
12 other substantial gainful activity existing in the national economy. 42 U.S.C. §§
13 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
14 1999).

15         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's
16 denial of social security benefits if the ALJ's findings are based on legal error or not
17 supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d
18 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.
19 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is
20 such "'relevant evidence as a reasonable mind might accept as adequate to support a
21 conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*
22 *Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not

substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp., supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

//

## DISCUSSION

Plaintiff argues that the ALJ erred in failing to consider at step three whether plaintiff met or equaled Listing 12.05(C).  At step three of the sequential evaluation of disability, the ALJ considers whether one or more of the claimant's impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations.  The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *Tackett,* 180 F.3d at 1099.  If a claimant meets or equals a listing, the claimant is found *per se* disabled without further inquiry.

Each listing sets forth the "symptoms, signs, and laboratory findings" that must be established in order for a claimant's impairment to meet the listing.  *Tackett*, 180 F.3d at 1099.  The listing at issue in this case has three requirements:  First, plaintiff must satisfy the introductory paragraph, which requires that plaintiff had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" (before age 22).  If plaintiff meets the criteria in this introductory paragraph, then plaintiff must satisfy any one of the four sets of criteria following the introductory paragraph, In this case, the only applicable subset of criteria is contained in subparagraph C.  In that paragraph, plaintiff must prove that she has a valid verbal, performance, or full scale IQ of 60-70 and, additionally, that she has a physical or other mental impairment imposing an additional and significant work-related limitation of function.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The parties do not dispute the IQ finding of Dr. Christina Rasmussen, Ph.D., who assigned plaintiff a full-scale IQ of 70 (Tr. 661). Furthermore, neither party disputes that the ALJ identified multiple additional severe impairments at step two (Tr. 386-87). *See Pedro v. Astrue*, 849 F.Supp.2d 1006, 1015 (D. Or. 2011) (finding that an additional impairment listed at step two satisfies the third prong of Listing 12.05C). Therefore, the only element of the listing at issue is whether or not plaintiff meets the criteria set forth in the introductory paragraph; namely whether she had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting during the developmental period."

The *Diagnostic & Statistical Manual of Mental Disorders* describes "adaptive functioning" as "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socioeconomic background, and community setting. . . . Problems in adaption are more likely to improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable attribute." *American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders* 42 (4th ed. 2000, text revision)( *DSM-IV-TR* ).

The Commissioner argues that plaintiff cannot meet this first criterion because she was diagnosed with "borderline intellectual functioning," as opposed to "mental retardation." But Listing 12.05 does not reference a specific diagnosis of mental retardation and several district courts in this circuit, along with the Eighth Circuit Court of Appeals, have held that a diagnosis of mental retardation is not a prerequisite for Listing 12.05C. *See, e.g.*, *Pedro*, 849 F.Supp.2d at 1009-10; *Maresh v. Barnhart*, 438

1 F.3d 897, 899 (8th Cir. 2006); *Wilson v. Colvin*, Case No. 12-cv-00483-CWD, 2013 WL
2 6229369, at *3-4 (D. Ida. Dec. 2, 2013); *Whiteside v. Colvin*, Case No. C11-243-RHW,
3 2013 WL 5373040, at *4 (E.D. Wash. Sep. 25, 2013); *Forsythe v. Astrue*, Case No. 10-
4 cv-01515-AWI-GSA, 2012 WL 217751, at *6 (E.D. Cal. Jan. 24, 2012).

5    Rather, plaintiff meets the criteria set forth in the introductory paragraph so long
6 as she demonstrates an early onset of significantly subaverage general intellectual
7 functioning with deficits in adaptive functioning.  Here, she did so.  Among other
8 undisputed facts from plaintiff's childhood, she was in special education classes, had to
9 repeat grades, and never was able to graduate or obtain her GED because of difficulties
10 reading and understanding the words (Tr. 416). As noted by the ALJ, plaintiff had a
11 history of dyslexia and a learning disability (Tr. 415-16).  In short, she had a history of
12 deficits in adaptive functioning during her developmental years – thus meeting the
13 criteria set forth in the introductory paragraph of Listing 12.05.  Although plaintiff later
14 was able to work at a variety of low-skilled jobs, the introductory paragraph of Listing
15 12.05 does not consider plaintiff's subsequent employment, but rather her level of
16 functioning during her early years – before age 22.

17    This case is remarkably similar to the facts presented in *Pedro*, 849 F. Supp. 1006,
18 in which the undisputed record demonstrated that, among other things, plaintiff was in
19 special education classes from a very early age, struggled with reading and writing, had
20 memory problems and had difficulty completing paperwork. *Id*. at 1012.  In that case,
21 plaintiff graduated from high school, and had a history as an adult of low skilled work.
22 Nevertheless, the court reversed the ALJ's finding of nondisability and remanded the

case for an immediate award of benefits. *Id.* at 1017. The court concluded that "a claimant can satisfy Listing 12.05C without 'having to demonstrate a disabling or even severe, level of mental functioning impairment.'" *Id.* at 1014 (*citing Gomez, supra,* at 1057). The same applies here.

As noted by Magistrate Judge Theiler in a recent case from this district, *Evans v. Colvin*, 13-cv-5436, ECF No. 27, page 11(W.D. Wash Jan. 30, 2014):

> The unique structure of Listing 12.05C — which allows a claimant to be found *per se* disabled without "having to demonstrate a disabling, or even severe, level of mental functioning impairment" (*Gomez*, 695 F.Supp.2d at 1057) — leads to a curious result in this case, where Plaintiff has worked for many years, and is presumably working at this time. But because the Court finds that the plain language of Listing 12.05C and its regulatory history suggest that the listing looks to deficits in adaptive functioning during the claimant's developmental period, and because the record contains substantial evidence showing that Plaintiff satisfies that prong (along with the other prongs of Listing 12.05C5), the Court recommends reversing and remanding the ALJ's decision to the Commissioner for the payment of benefits.

While this Court recognizes the somewhat incongruity of a recent work history and a finding of disability, this particular Listing leads to this inevitable conclusion.

The Commissioner fails to acknowledge this portion of the Listing and argues that plaintiff cannot meet criteria set forth in the introductory paragraph of 12.05 because she cannot show that she has the requisite *current* deficits in adaptive functioning, in light of her work history. According to the Commissioner, a person who meets Listing 12.05 "should have virtually no history of working outside of sheltered workshops" (ECF No. 19, p. 8) and because plaintiff has held a variety of jobs in the past, she should not be considered *per se* disabled. *See, e.g.*, Tr. 158 (describing plaintiff's work history).

The Commissioner's argument seems to read an additional requirement into the introductory paragraph of Listing 12.05: namely that the deficits in adaptive functioning must be disabling on their own, and restrict plaintiff's ability to engage in *any* work, other than in a sheltered workshops. This position is not consistent with other cases decided within the 9th circuit and elsewhere. These courts have held that the introductory sentence of Listing 12.05 focuses only on deficits in adaptive functioning that existed during the developmental period, and even though some courts examine current functioning deficits, they have not held that any particular indicia of severity must be demonstrated. *See, e.g.*, *Thresher v. Astrue*, 283 Fed. Appx. 473, 475 (9th Cir. Jun. 19, 2008); *Pedro*, 849 F.Supp.2d at 1014 (holding that the ALJ erred in finding that because plaintiff can currently drive, live independently, handle her own hygiene, and care for her children, she cannot be disabled; "[T]he record contains evidence demonstrating deficits in adaptive functioning prior to age 22. The listing does not require more."); *Gomez v. Astrue*, 695 F.Supp.2d 1049, 1057 (C.D. Cal. Feb. 10, 2010) ("Because [Listing] 12.05 is structured differently than the other mental disorder listings, a claimant can meet [Listing 12.05C] without having to demonstrate a disabling, or even severe, level of mental functional impairment.")[1]. Furthermore, several courts have held that even though a claimant has worked in the past, this fact does not preclude application of Listing 12.05C. *See Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (finding that although an ALJ

---

[1] Although the district court opinions are not binding precedent, the reasoning of those cases is persuasive.

found that the claimant could return to past work as a laundry loader, janitor, and dish washer, if he meets Listing 12.05C "he must be found disabled without consideration of his age, education, and work experience"); *Gomez*, 695 F.Supp.2d at 1058-59 (finding that plaintiff's work history did not demonstrate abilities inconsistent with a low level of intellectual functioning); *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989) ("[T]he Secretary may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met: 'When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap.'" (*citing Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)) *Pedro, supra*, at 1012 (plaintiff found to meet the criteria of 12.05C even though she had a "history of low skilled work" including work in a laundry, as a bagger in a grocery store, bagging groceries and cleaning bathrooms).

      Plaintiff's description of her prior jobs does not suggest that her work history is inconsistent with borderline intellectual functioning.  For example, she testified at the second administrative hearing that her most recent job was washing dishes at a restaurant where her boyfriend worked as the kitchen manager and had hired her, and she was fired after her boyfriend left that position (Tr. 430-31).  She previously worked providing home healthcare services for her husband's aunt's foster care business (Tr. 59-60).  The jobs listed on plaintiff's disability report are primarily unskilled jobs and most were performed for a matter of months (Tr. 158).  Thus, the Court rejects the Commissioner's argument that plaintiff's recent work history is incompatible with a low level of intellectual functioning.  *See Gomez*, 695 F.Supp.2d at 1058-59.

Because the record establishes each of the criteria set forth in Listing 12.05(C), plaintiff was prejudiced by the ALJ's error in failing to address that listing in her step-three discussion.[2] No further proceedings would be useful, however, because the record is fully developed and indicates that plaintiff should have been found disabled at step three. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). In this situation, a remand for an award of benefits is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter is **REVERSED** and **REMANDED** for payment of benefits. **JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 5th day of March, 2014.

J. Richard Creatura
United States Magistrate Judge

---

[2] In light of this finding, the Court need not address plaintiff's additional assignments of error.

ORDER ON PLAINTIFF'S COMPLAINT - 12